# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

KELLY CONNERY-THOMAS,
c/o
Werman Salas P.C.
335 18th Pl. NE
Washington, D.C. 20002,

EWA PINKOWSKA,
c/o
Werman Salas P.C.
335 18th Pl. NE
Washington, D.C. 20002,

KRISTINA HUDSON,
c/o
Werman Salas P.C.
335 18th Pl. NE
Washington, D.C. 20002,

LEAH MEBRAHTU,
c/o
Werman Salas P.C.
335 18th Pl. NE
Washington, D.C. 20002,

and

MICHELE WHITE,
c/o
Werman Salas P.C.
335 18th Pl. NE
Washington, D.C. 20002,

on behalf of themselves and all others similarly
situated,

                    Plaintiffs,

        v.

SOCIAL RESTAURANT GROUP, LLC t/a
PROVISION NO. 14,
2100 14th St. NW
Washington, D.C. 20009,

CLASS AND COLLECTIVE
ACTION COMPLAINT

Case No.
_____

Jury Demand

1

MICHAEL BRAMSON,
2100 14th St. NW
Washington, D.C. 20009,

and

NAEEM MOHD,
2100 14th St. NW
Washington, D.C. 20009,

                    Defendants.

Plaintiffs Kelly Connery-Thomas, Ewa Pinkowska, Kristina Hudson, Leah Mebrahtu, and

Michele White bring this class and collective action on behalf of themselves and all others

similarly situated against Defendants Social Restaurant Group, LLC, Michael Bramson, and

Naeem Mohd.  Plaintiffs complain and allege as follows:

## **INTRODUCTION**

1.       Plaintiffs worked for Defendants as tipped employees at Defendants' Provision

No. 14 location in Washington, D.C.

2.       Defendants deprived Plaintiffs and similarly situated employees of earned

minimum wages throughout their employment by unlawfully availing themselves of a tip credit

and paying tipped employees subminimum wages.

3.       Defendants could not lawfully avail themselves of the tip credit for a number of

reasons, including but not limited to: (1) Defendants failed to provide Plaintiffs and other tipped

employees with proper notice that they planned to avail themselves of the tip credit; (2)

Defendants unlawfully retained tipped employees' tips; (3) Defendants failed to post their tip-

sharing policy at the restaurant; (4) Defendants required tipped employees to perform side work

for more than 20 percent of their time at work and required them to engage in non-tip performing

"dual job" duties; and (5) Defendants failed to provide tipped employees with an itemized statement with each paycheck.

4.       Defendants also failed to pay Plaintiffs and similarly situated employees at all for hours they worked over 40 in a workweek.

5.       Defendants are liable to Plaintiffs and similarly situated employees for the tips they improperly withheld from tipped employees.

6.       Defendants also unlawfully required Plaintiffs and similarly situated employees to purchase and launder their uniforms.

7.       Finally, Defendants deprived Plaintiffs and similarly situated employees of paid sick leave.

8.       Plaintiffs bring this action against Defendants to enforce critical rights provided under the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* ("FLSA"), D.C. Accrued Safe and Sick Leave Act ("Sick Leave Act"), D.C. Code § 32-531.01 *et seq.*, the D.C. Minimum Wage Revision Act ("DCMWRA"), D.C. Code § 32-1001 *et seq.*, the D.C. Wage Payment and Collection Law ("DCWPCL"), D.C. Code § 32-1301 *et seq*, and supporting D.C. wage regulations (DCMWRA, DCWPCL, and D.C. wage regulations, collectively, "D.C. Wage Laws").

## JURISDICTION AND VENUE

9.       This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 and 1337.

10.       This Court also has jurisdiction over Plaintiffs' claims under the FLSA pursuant to 29 U.S.C. § 216(b).

11.       This Court has supplemental jurisdiction over the D.C. Wage Laws claims pursuant to 28 U.S.C. § 1367 because they are so closely related to the claims under the FLSA

that they form part of the same case or controversy under Article III of the United States
Constitution.

12.     Venue is proper in Washington, D.C. pursuant to 28 U.S.C. § 1391.

13.     This Court is empowered to issue a declaratory judgment pursuant to 28 U.S.C.
§§ 2201 and 2202.

## PARTIES

*Plaintiffs*

**Kelly Connery-Thomas**

14.     Plaintiff Connery-Thomas is an adult individual who lives in Takoma Park,
Maryland.

15.     Plaintiff Connery-Thomas was employed by Defendants at Provision No. 14 in
Washington, D.C. as a bartender from approximately April 2016 through the summer of 2018.

16.     Defendants paid Plaintiff Connery-Thomas at a sub-minimum, tip-credit wage of
$3.33 per hour.

17.     Plaintiff Connery-Thomas's average pay (i.e., total weekly compensation divided
by total weekly hours) in every workweek of her employment, exclusive of tips, fell below the
federal and Washington, D.C. minimum wage.

18.     Upon information and belief, Defendants never provided Plaintiff Connery-
Thomas with notice that included:

> a.     The name of the employer;
> b.     The physical address of Defendants' main office;
> c.     Defendants' telephone number;
> d.     Plaintiff Connery-Thomas's rate of pay and the basis for that rate;
> e.     Plaintiff Connery-Thomas's regular payday;
> f.     The D.C. tipped minimum wage;
> g.     The amount of tip credit claimed by Defendants;
> h.     That the tip credit claimed by Defendants could not exceed the amount of

tips actually received by Plaintiff Connery-Thomas;

i.   That Plaintiff Connery-Thomas must receive gratuities at least equal to the difference between the hourly wage paid and the minimum wage;

j.   If tips were not shared pursuant to a valid tip sharing policy, tipped workers must retain all the tips they receive;

k.   Any valid tip sharing policy;

l.   The percentage by which tips paid via credit card would be reduced by the credit card fee; and

m.   That the tip credit would not apply to any tipped employee unless the employee had been informed of these tip credit provisions.

19.   Upon information and belief, at the end of each pay period, Defendants did not provide Plaintiff Connery-Thomas with an itemized statement that included all deductions from wages, nor did it include a tip declaration that delineated cash tips and credit card tips.

20.   Defendants unlawfully withheld tips from Plaintiff Connery-Thomas, including but not limited to: (1) retaining 2% of gratuities from private parties and (2) withholding tips to pay for walkouts, breakages and when the cash register was short.

21.   For example, in December 2017, Plaintiff Connery-Thomas worked a number of private holiday parties and Defendants retained 2% of the tips she received from those private parties.

22.   Defendants required Plaintiff Connery-Thomas purchase her uniforms.  Plaintiff Connery-Thomas spent approximately $20 on polo shirts with Defendants' logo in 2018.

23.   Defendants required Plaintiff Connery-Thomas to pay for cleaning her uniform.

24.   Upon information and belief, Plaintiff Connery-Thomas worked over 40 hours almost every workweek while employed by Defendants.

25.   Defendants failed to compensate her at all for hours worked over 40 in a workweek.

26.   Approximately once a month, Defendants required Plaintiff Connery-Thomas to come into the restaurant to help do a "deep clean" for approximately 3-4 hours.  Defendants did

not compensate Plaintiff Connery-Thomas at all for this time.

27.     While paying her at the sub-minimum, tip-credit wage, Defendants required Plaintiff Connery-Thomas to spend over 20 percent of her work time during her bartending shifts performing work that had no customer interaction and that did not generate tips.

28.     Plaintiff Connery-Thomas typically spent approximately 40 percent of her work time performing such duties.

29.     Plaintiff Connery-Thomas worked opening shifts for Defendants.  Defendants required her to arrive at the restaurant approximately two hours before it opened and perform opening duties, such as, but not limited to: cutting fruit, wiping down bottles, setting up the bar, filling juices and syrups, making batch cocktails, and changing out the kegs.

30.     Plaintiff Connery-Thomas worked closing shifts for Defendants.  Defendants required her to stay at the restaurant approximately two hours after it closed and perform closing duties, such as but not limited to: cleaning the bar, wiping down bottles, washing containers, storing juices and syrups, mopping, sweeping, emptying the bar wells, and cleaning the bar mats.

31.     During her shifts, Plaintiff Connery-Thomas was required to perform duties in addition to serving customers, such as: clearing and wiping down the bar, discarding uneaten food in the garbage, placing dirty silverware on a tray, carrying dirty glasses and silverware to the kitchen, and running the dishwasher.

32.     While working as a bartender, Defendants required Plaintiff Connery-Thomas to attend pre-shift team meetings while being paid a sub-minimum hourly wage.

33.     Defendants did not provide Plaintiff Connery-Thomas with paid sick leave.

34.     Plaintiff Connery-Thomas is a covered employee within the meaning of the FLSA, D.C. Wage Laws and the Sick Leave Act.

**Ewa Pinkowska**

35.     Plaintiff Pinkowska is an adult individual who lives in Dale City, Virginia.

36.     Plaintiff Pinkowska was employed by Defendants at Provision No. 14 in Washington, D.C. as a bartender from approximately April 2018 through November 2018.

37.     Defendants paid Plaintiff Pinkowska at a sub-minimum, tip-credit wage of $3.33 per hour until July 2018.

38.     From July 2018 until approximately November 2018, Defendants paid Plaintiff Pinkowska at a sub-minimum, tip-credit wage of $3.89 per hour.

39.     Plaintiff Pinkowska's average pay (i.e., total weekly compensation divided by total weekly hours) in every workweek of her employment, exclusive of tips, fell below the federal and Washington, D.C. minimum wage.

40.     Upon information and belief, Defendants never provided Plaintiff Pinkowska with notice that included:

    a.     The name of the employer;
    b.     The physical address of Defendants' main office;
    c.     Defendants' telephone number;
    d.     Plaintiff Pinkowska's rate of pay and the basis for that rate;
    e.     Plaintiff Pinkowska's regular payday;
    f.     The D.C. tipped minimum wage;
    g.     The amount of tip credit claimed by Defendants;
    h.     That the tip credit claimed by Defendants could not exceed the amount of tips actually received by Plaintiff Pinkowska;
    i.     That Plaintiff Pinkowska must receive gratuities at least equal to the difference between the hourly wage paid and the minimum wage;
    j.     If tips were not shared pursuant to a valid tip sharing policy, tipped workers must retain all the tips they receive;
    k.     Any valid tip sharing policy;
    l.     The percentage by which tips paid via credit card would be reduced by the credit card fee; and
    m.     That the tip credit would not apply to any tipped employee unless the employee had been informed of these tip credit provisions.

41.     Upon information and belief, at the end of each pay period, Defendants did not

provide Plaintiff Pinkowska with an itemized statement that included all deductions from wages, nor did it include a tip declaration that delineated cash tips and credit card tips.

42.    Defendants unlawfully withheld tips from Plaintiff Pinkowska, including but not limited to: (1) retaining 2% of gratuities from private parties and (2) withholding tips to pay for walkouts, breakages and when the cash register was short.

43.    For example, in the summer of 2018, Plaintiff Pinkowska worked a number of private holiday parties and Defendants retained 2% of the tips she received from those private parties.

44.    Defendants required Plaintiff Pinkowska purchase her uniforms.  Plaintiff Pinkowska spent approximately $40 on polo shirts with Defendants' logo in 2018.

45.    Defendants required Plaintiff Pinkowska to pay for cleaning her uniform.

46.    Upon information and belief, Plaintiff Pinkowska worked over 40 hours almost every workweek while employed by Defendants.

47.    Defendants failed to compensate her at all for hours worked over 40 in a workweek.

48.    Approximately once a month, Defendants required Plaintiff Pinkowska to come into the restaurant to help do a "deep clean" for approximately 3-4 hours.  Defendants did not compensate Plaintiff Pinkowska at all for this time.

49.    While paying her at the sub-minimum, tip-credit wage, Defendants required Plaintiff Pinkowska to spend over 20 percent of her work time during her bartending shifts performing work that had no customer interaction and that did not generate tips.

50.    Plaintiff Pinkowska typically spent approximately 40 percent of her work time performing such duties.

51.     Plaintiff Pinkowska worked opening shifts for Defendants.  Defendants required her to arrive at the restaurant approximately two hours before it opened and perform opening duties, such as: cutting fruit, wiping down bottles, setting up the bar, filling juices and syrups, making batch cocktails, changing out the kegs, and setting up for private parties.

52.     Plaintiff Pinkowska worked closing shifts for Defendants.  Defendants required her to stay at the restaurant approximately two hours after it closed and perform closing duties, such as: cleaning the bar, wiping down bottles, washing containers, storing juices and syrups, mopping, sweeping, emptying the bar wells, and cleaning the bar mats.

53.     During her shifts, Plaintiff Pinkowska was required to perform duties in addition to serving customers, such as: clearing and wiping down the bar, discarding uneaten food in the garbage, placing dirty silverware on a tray, carrying dirty glasses and silverware to the kitchen, and running the dishwasher.

54.     While working as a bartender, Defendants required Plaintiff Pinkowska to attend pre-shift team meetings while being paid a sub-minimum hourly wage.

55.     Defendants did not provide Plaintiff Pinkowska with paid sick leave.

56.     Plaintiff Pinkowska is a covered employee within the meaning of the FLSA, D.C. Wage Laws and the Sick Leave Act.

**Kristina Hudson**

57.     Plaintiff Hudson is an adult individual who lives in Detroit, Michigan.

58.     Plaintiff Hudson was employed by Defendants at Provision No. 14 in Washington, D.C. as a bartender from approximately August 2016 through March 2018.

59.     Defendants paid Plaintiff Hudson at a sub-minimum, tip-credit wage of $3.17 per hour.

60.     Plaintiff Hudson's average pay (i.e., total weekly compensation divided by total weekly hours) in every workweek of her employment, exclusive of tips, fell below the federal and Washington, D.C. minimum wage.

61.     Upon information and belief, Defendants never provided Plaintiff Hudson with notice that included:

a.     The name of the employer;
b.     The physical address of Defendants' main office;
c.     Defendants' telephone number;
d.     Plaintiff Hudson's rate of pay and the basis for that rate;
e.     Plaintiff Hudson's regular payday;
f.     The D.C. tipped minimum wage;
g.     The amount of tip credit claimed by Defendants;
h.     That the tip credit claimed by Defendants could not exceed the amount of tips actually received by Plaintiff Hudson;
i.     That Plaintiff Hudson must receive gratuities at least equal to the difference between the hourly wage paid and the minimum wage;
j.     If tips were not shared pursuant to a valid tip sharing policy, tipped workers must retain all the tips they receive;
k.     Any valid tip sharing policy;
l.     The percentage by which tips paid via credit card would be reduced by the credit card fee; and
m.     That the tip credit would not apply to any tipped employee unless the employee had been informed of these tip credit provisions.

62.     Upon information and belief, at the end of each pay period, Defendants did not provide Plaintiff Hudson with an itemized statement that included all deductions from wages, nor did it include a tip declaration that delineated cash tips and credit card tips.

63.     Defendants unlawfully withheld tips from Plaintiff Hudson, including but not limited to: (1) retaining 2% of gratuities from private parties and (2) withholding tips to pay for walkouts, breakages and when the cash register was short.

64.     For example, in December 2017, Plaintiff Hudson worked a number of private holiday parties and Defendants retained 2% of the tips she received from those private parties.

65.     Defendants required Plaintiff Hudson purchase her uniforms.  Plaintiff Hudson

spent approximately $20 on polo shirts with Defendants' logo in 2018.

66.     Defendants required Plaintiff Hudson to pay for cleaning her uniform.

67.     Upon information and belief, Plaintiff Hudson worked over 40 hours almost every workweek while employed by Defendants.

68.     Defendants failed to compensate her at all for hours worked over 40 in a workweek.

69.     Approximately once a month, Defendants required Plaintiff Hudson to come into the restaurant to help do a "deep clean" for approximately 3-4 hours.  Defendants did not compensate Plaintiff Hudson at all for this time.

70.     While paying her at the sub-minimum, tip-credit wage, Defendants required Plaintiff Hudson to spend over 20 percent of her work time during her bartending shifts performing work that had no customer interaction and that did not generate tips.

71.     Plaintiff Hudson typically spent approximately 40 percent of her work time performing such duties.

72.     Plaintiff Hudson worked opening shifts for Defendants.  Defendants required her to arrive at the restaurant approximately two hours before it opened and perform opening duties, such as: cutting fruit, wiping down bottles, setting up the bar, filling juices and syrups, making batch cocktails, changing out the kegs, and setting up for private parties.

73.     Plaintiff Hudson worked closing shifts for Defendants.  Defendants required her to stay at the restaurant approximately two hours after it closed and perform closing duties, such as: cleaning the bar, wiping down bottles, washing containers, storing juices and syrups, mopping, sweeping, emptying the bar wells, and cleaning the bar mats.

74.     During her shifts, Plaintiff Hudson was required to perform duties in addition to

serving customers, such as: clearing and wiping down the bar, discarding uneaten food in the garbage, placing dirty silverware on a tray, carrying dirty glasses and silverware to the kitchen, and running the dishwasher.

75.     While working as a bartender, Defendants required Plaintiff Hudson to attend pre-shift team meetings while being paid a sub-minimum hourly wage.

76.     Defendants did not provide Plaintiff Hudson with paid sick leave.

77.     Plaintiff Hudson is a covered employee within the meaning of the FLSA, D.C. Wage Laws and the Sick Leave Act.

**Leah Mebrahtu**

78.     Plaintiff Mebrahtu is an adult individual who lives in Washington, D.C.

79.     Plaintiff Mebrahtu was employed by Defendants at Provision No. 14 in Washington, D.C. as a bartender from approximately March 2018 through June 2019.

80.     Defendants paid Plaintiff Mebrahtu at a sub-minimum, tip-credit wage of $3.89 per hour.

81.     Plaintiff Mebrahtu's average pay (i.e., total weekly compensation divided by total weekly hours) in every workweek of her employment (or virtually every workweek), exclusive of tips, fell below the federal and Washington, D.C. minimum wage.

82.     Upon information and belief, Defendants never provided Plaintiff Mebrahtu with notice that included:

    a.     The name of the employer;
    b.     The physical address of Defendants' main office;
    c.     Defendants' telephone number;
    d.     Plaintiff Mebrahtu's rate of pay and the basis for that rate;
    e.     Plaintiff Mebrahtu's regular payday;
    f.     The D.C. tipped minimum wage;
    g.     The amount of tip credit claimed by Defendants;
    h.     That the tip credit claimed by Defendants could not exceed the amount of

<blockquote>

tips actually received by Plaintiff Mebrahtu;

i.    That Plaintiff Mebrahtu must receive gratuities at least equal to the difference between the hourly wage paid and the minimum wage;

j.    If tips were not shared pursuant to a valid tip sharing policy, tipped workers must retain all the tips they receive;

k.    Any valid tip sharing policy;

l.    The percentage by which tips paid via credit card would be reduced by the credit card fee; and

m.    That the tip credit would not apply to any tipped employee unless the employee had been informed of these tip credit provisions.

</blockquote>

83.    Upon information and belief, at the end of each pay period, Defendants did not provide Plaintiff Mebrahtu with an itemized statement that included all deductions from wages, nor did it include a tip declaration that delineated cash tips and credit card tips.

84.    Defendants unlawfully withheld tips from Plaintiff Mebrahtu, including but not limited to: (1) retaining 2% of gratuities from private parties and (2) withholding tips to pay for walkouts, breakages and when the cash register was short.

85.    For example, in December 2018, Plaintiff Mebrahtu worked a number of private holiday parties and Defendants retained 2% of the tips she received from those private parties.

86.    Defendants required Plaintiff Mebrahtu to pay for cleaning her uniform.

87.    Upon information and belief, Plaintiff Mebrahtu worked over 40 hours almost every workweek while employed by Defendants.

88.    Defendants failed to compensate her at all for hours worked over 40 in a workweek.

89.    Approximately once a month, Defendants required Plaintiff Mebrahtu to come into the restaurant to help do a "deep clean" for approximately 3-4 hours.  Defendants did not compensate Plaintiff Mebrahtu at all for this time.

90.    While paying her at the sub-minimum, tip-credit wage, Defendants required Plaintiff Mebrahtu to spend over 20 percent of her work time during her bartending shifts

performing work that had no customer interaction and that did not generate tips.

91.     Plaintiff Mebrahtu typically spent approximately 40 percent of her work time performing such duties.

92.     Plaintiff Mebrahtu worked opening shifts for Defendants.  Defendants required her to arrive at the restaurant approximately two hours before it opened and perform opening duties, such as: cutting fruit, wiping down bottles, setting up the bar, filling juices and syrups, making batch cocktails, changing out the kegs, polishing glasses, and rolling silverware.

93.     Plaintiff Mebrahtu worked closing shifts for Defendants.  Defendants required her to stay at the restaurant approximately two hours after it closed and perform closing duties, such as: cleaning the bar, wiping down bottles, washing containers, storing juices and syrups, mopping, sweeping, emptying the bar wells, and cleaning the bar mats.

94.     During her shifts, Plaintiff Mebrahtu was required to perform duties in addition to serving customers, such as: clearing and wiping down the bar, discarding uneaten food in the garbage, placing dirty silverware on a tray, carrying dirty glasses and silverware to the kitchen, and running the dishwasher.

95.     While working as a bartender, Defendants required Plaintiff Mebrahtu to attend pre-shift team meetings while being paid a sub-minimum hourly wage.

96.     Defendants did not provide Plaintiff Mebrahtu with paid sick leave.

97.     Plaintiff Mebrahtu is a covered employee within the meaning of the FLSA, D.C. Wage Laws and the Sick Leave Act.

**Michele White**

98.     Plaintiff White is an adult individual who lives in Washington, D.C.

99.     Plaintiff White was employed by Defendants at Provision No. 14 in Washington,

D.C. as a bartender from approximately February 2019 through February 2020.

100.    Defendants paid Plaintiff White at a sub-minimum, tip-credit wage of $3.89 per hour.

101.    Plaintiff White's average pay (i.e., total weekly compensation divided by total weekly hours) in every workweek of her employment, exclusive of tips, fell below the federal and Washington, D.C. minimum wage.

102.    Upon information and belief, Defendants never provided Plaintiff White with notice that included:

      a.      The name of the employer;
      b.      The physical address of Defendants' main office;
      c.      Defendants' telephone number;
      d.      Plaintiff White's rate of pay and the basis for that rate;
      e.      Plaintiff White's regular payday;
      f.      The D.C. tipped minimum wage;
      g.      The amount of tip credit claimed by Defendants;
      h.      That the tip credit claimed by Defendants could not exceed the amount of tips actually received by Plaintiff White;
      i.      That Plaintiff White must receive gratuities at least equal to the difference between the hourly wage paid and the minimum wage;
      j.      If tips were not shared pursuant to a valid tip sharing policy, tipped workers must retain all the tips they receive;
      k.      Any valid tip sharing policy;
      l.      The percentage by which tips paid via credit card would be reduced by the credit card fee; and
      m.      That the tip credit would not apply to any tipped employee unless the employee had been informed of these tip credit provisions.

103.    Upon information and belief, at the end of each pay period, Defendants did not provide Plaintiff White with an itemized statement that included all deductions from wages, nor did it include a tip declaration that delineated cash tips and credit card tips.

104.    Defendants required Plaintiff White to pay for cleaning her uniform.

105.    Approximately once a month, Defendants required Plaintiff White to come into the restaurant to help do a "deep clean" for approximately 3-4 hours.  Defendants did not

compensate Plaintiff White at all for this time.

106.    While paying her at the sub-minimum, tip-credit wage, Defendants required Plaintiff White to spend over 20 percent of her work time during her bartending shifts performing work that had no customer interaction and that did not generate tips.

107.    Plaintiff White typically spent approximately 40 percent of her work time performing such duties.

108.    Plaintiff White worked opening shifts for Defendants.  Defendants required her to arrive at the restaurant approximately two hours before it opened and perform opening duties, such as: cutting fruit, wiping down bottles, setting up the bar, filling juices and syrups, making batch cocktails, changing out the kegs, polishing glasses, and rolling silverware.

109.    Plaintiff White worked closing shifts for Defendants.  Defendants required her to stay at the restaurant approximately two hours after it closed and perform closing duties, such as: cleaning the bar, wiping down bottles, washing containers, storing juices and syrups, mopping, sweeping, emptying the bar wells, and cleaning the bar mats.

110.    During her shifts, Plaintiff White was required to perform duties in addition to serving customers, such as: clearing and wiping down the bar, discarding uneaten food in the garbage, placing dirty silverware on a tray, carrying dirty glasses and silverware to the kitchen, and running the dishwasher.

111.    While working as a bartender, Defendants required Plaintiff White to attend pre-shift team meetings while being paid a sub-minimum hourly wage.

112.    Defendants did not provide Plaintiff White with paid sick leave.

113.    Plaintiff White is a covered employee within the meaning of the FLSA, D.C. Wage Laws and the Sick Leave Act.

*Defendants*

**Social Restaurant Group, LLC**

114.     Social Restaurant Group, LLC ("Social Restaurant Group") is a Washington, D.C. corporation and is headquartered in Washington, D.C.

115.     Social Restaurant Group operates in Washington, D.C.

116.     Social Restaurant Group is a covered employer within the meaning of the FLSA, D.C. Wage Laws, and the Sick Leave Act and at all relevant times employed Plaintiffs and similarly situated current and former employees.

117.     Social Restaurant Group has the power to control the terms and conditions of employment for Plaintiffs and those similarly situated, including with respect to their compensation.

118.     During relevant times, Social Restaurant Group maintained control, oversight, and direction over Plaintiffs and similarly situated employees, including with respect to timekeeping, payroll, and other employment practices that applied to them.

119.     Social Restaurant Group applies the same employment policies, practices, and procedures to all tipped employees.

120.     Social Restaurant Group avails itself of the tip credit and paid tipped employees subminimum hourly wages.

121.     Social Restaurant Group does not provide tipped employees with notice that it intends to avail itself of the tip credit, in violation of the FLSA and D.C. Wage Laws.

122.     Social Restaurant Group unlawfully retains tips that belong to tipped employees.

123.     Social Restaurant Group does not post its tip-sharing policy in the restaurant.

124.    Although Social Restaurant Group pays its tipped employees subminimum wages, Social Restaurant Group requires its tipped employees to: (1) perform non-tip producing duties that were related to their tipped duties for more than 20 percent of their shift; and (2) perform non-tip producing duties that were unrelated to their tip producing duties.

125.    Social Restaurant Group does not provide to tipped employees at each pay period an itemized statement that includes deductions from wages and/or a tip declaration delineating cash tips and credit card tips.

126.    Social Restaurant Group requires tipped employees to pay for their uniforms and to pay for cleaning the uniforms.

127.    Social Restaurant Group uniformly fails to pay discharged employees in Washington, D.C. all wages earned not later than the working day following discharge and/or to pay all employees in Washington, D.C. who quit or resigned on the next payday or within seven days, whichever is earlier in violation of DCWPCL.

128.    Finally, Social Restaurant Group uniformly fails to provide paid sick leave to Plaintiffs and similarly situated workers in Washington, D.C.

**Michael Bramson**

129.    Defendant Bramson is a resident of McLean, Virginia.

130.    Defendant Bramson is the co-founder and part-owner of the Social Restaurant Group.

131.    Defendant Bramson is a covered employer within the meaning of the FLSA, D.C. Wage Laws, and the Sick Leave Act and at all relevant times employed Plaintiffs and similarly situated current and former employees.

132.    Defendant Bramson has the power to control the terms and conditions of employment for Plaintiffs and those similarly situated, including with respect to their compensation.

133.    During relevant times, Defendant Bramson maintains control, oversight, and direction over Plaintiffs and similarly situated employees, including with respect to timekeeping, payroll, and other employment practices that applied to them.

134.    Defendant Bramson applies the same employment policies, practices, and procedures to all tipped employees.

135.    Defendant Bramson avails himself of the tip credit and paid tipped employees subminimum hourly wages.

136.    Defendant Bramson does not provide tipped employees with notice that he intends to avail himself of the tip credit, in violation of the FLSA and D.C. Wage Laws.

137.    Defendant Bramson unlawfully retains tips that belong to tipped employees.

138.    Defendant Bramson does not post Defendants' tip-sharing policy in the restaurant.

139.    Although Defendant Bramson pays tipped employees subminimum wages, Defendant Bramson requires tipped employees to: (1) perform non-tip producing duties that were related to their tipped duties for more than 20 percent of their shift; and (2) perform non-tip producing duties that were unrelated to their tip producing duties.

140.    Defendant Bramson does not provide to tipped employees at each pay period an itemized statement that includes deductions from wages and/or a tip declaration delineating cash tips and credit card tips.

141.     Defendant Bramson uniformly fails to pay discharged employees in Washington, D.C. all wages earned not later than the working day following discharge and/or to pay all employees in Washington D.C. who quit or resigned on the next payday or within seven days, whichever is earlier in violation of DCWPCL.

142.     Defendant Bramson requires tipped employees to pay for their uniforms and to pay for cleaning the uniforms.

143.     Finally, Defendant Bramson uniformly fails to provide paid sick leave to Plaintiffs and similarly situated workers in Washington D.C.

**Naeem Mohd**

144.     Defendant Mohd is a resident of McLean, Virginia.

145.     Defendant Mohd is the co-founder and the CEO of the Social Restaurant Group.

146.     Defendant Mohd is a covered employer within the meaning of the FLSA, D.C. Wage Laws, and the Sick Leave Act and at all relevant times employed Plaintiffs and similarly situated current and former employees.

147.     Defendant Mohd has the power to control the terms and conditions of employment for Plaintiffs and those similarly situated, including with respect to their compensation.

148.     During relevant times, Defendant Mohd maintains control, oversight, and direction over Plaintiffs and similarly situated employees, including with respect to timekeeping, payroll, and other employment practices that applied to them.

149.     Defendant Mohd applies the same employment policies, practices, and procedures to all tipped employees.

150.    Defendant Mohd avails himself of the tip credit and paid tipped employees subminimum hourly wages.

151.    Defendant Mohd does not provide tipped employees with notice that he intends to avail himself of the tip credit, in violation of the FLSA and D.C. Wage Laws.

152.    Defendant Mohd unlawfully retains tips that belong to tipped employees.

153.    Defendant Mohd does not post Defendants' tip-sharing policy in the restaurant.

154.    Although Defendant Mohd pays his tipped employees subminimum wages, Defendant Mohd requires tipped employees to: (1) perform non-tip producing duties that were related to their tipped duties for more than 20 percent of their shift; and (2) perform non-tip producing duties that were unrelated to their tip producing duties.

155.    Defendant Mohd does not provide to tipped employees at each pay period an itemized statement that includes deductions from wages and/or a tip declaration delineating cash tips and credit card tips.

156.    Defendant Mohd uniformly fails to pay discharged employees in Washington D.C. all wages earned not later than the working day following discharge and/or to pay all employees in Washington D.C. who quit or resigned on the next payday or within seven days, whichever is earlier in violation of DCWPCL.

157.    Defendant Mohd requires tipped employees to pay for their uniforms and to pay for cleaning the uniforms.

158.    Finally, Defendant Mohd uniformly fails to provide paid sick leave to Plaintiffs and similarly situated workers in Washington D.C.

## COLLECTIVE ACTION ALLEGATIONS UNDER THE FLSA

159.    Plaintiffs bring the First and Second Causes of Action pursuant to the FLSA, 29

U.S.C. § 216(b), on behalf of themselves and all current and former employees of Defendants

who worked at Provision No. 14 in the three years and 55 days before those employees filed

consent forms to join this action and who were paid sub-minimum, tip-credit hourly wages (the

"FLSA Collective").[1]

160.    Defendants are aware or should have been aware that federal law requires them to

pay tipped employees the full minimum wage when they: (1) fail to give proper notice that they

intend to avail themselves of the tip credit; (2) retain tips that lawfully belong to tipped

employees; and (3) require tipped employees to perform non-tipped work that (a) is unrelated to

their tipped occupation or (b) exceeds 20 percent of their time worked during individual

workweeks.

161.    Defendants are aware or should have been aware that federal law requires them to

pay tipped employees for all hours worked.

162.    Defendants do not pay tipped employees for all hours worked.

163.    Defendants are aware or should have been aware that federal law requires them to

pay employees 1.5 times the minimum wage for hours worked over 40 in a workweek.

164.    Defendants do not pay employees 1.5 times the minimum wage for hours worked

over 40 in a workweek.

165.    Plaintiffs are similarly situated to Defendants' other tipped employees because

those employees were also paid sub-minimum hourly wages while they were subject to

Defendants' illegal policies.

---

[1]    Social Restaurant Group and Plaintiffs entered into tolling agreements from November 4, 2020 through December 29, 2020, 55 days prior to the filing of this Complaint, on behalf of themselves and all putative Collective Members to explore settlement negotiations.  They were unable to settle this matter.

166.    Plaintiffs and the FLSA Collective all perform or performed duties and were all paid at subminimum wages.

167.    Defendants are liable under the FLSA for, *inter alia*, failing to properly compensate Plaintiffs.  There are many similarly situated current and former tipped employees who have been underpaid in violation of the FLSA who would benefit from the issuance of a court-supervised notice of the present lawsuit and the opportunity to join this lawsuit.  Those similarly situated employees are known to Defendants, are readily identifiable, and can be located through Defendants' records.  Notice should be sent to the FLSA Collective pursuant to 29 U.S.C. § 216(b).

168.    All the work that Plaintiffs and the FLSA Collective have performed has been at the direction of Defendants, and/or Defendants have been aware of all the work that Plaintiffs and the FLSA Collective have performed.

169.    As part of their regular business practice, Defendants have intentionally, willfully, and repeatedly engaged in a pattern, practice, and/or policy of violating the FLSA with respect to Plaintiffs and the FLSA Collective.

## CLASS ACTION ALLEGATIONS: D.C. RULE 23 WAGE CLASS

170.    Plaintiffs bring the Third, Fourth, Fifth, and Sixth Causes of Actions under the Federal Rule of Civil Procedure 23, on behalf of themselves and all current and former employees of Defendants who worked at Provision No. 14 within the past three years and 55 days and the date of final judgment, and who were paid sub-minimum, tip-credit hourly wages ("D.C. Rule 23 Wage Class").[2]

---

[2]     Social Restaurant Group and Plaintiffs entered into tolling agreements from November 4, 2020 through December 29, 2020, 55 days prior to the filing of this Complaint, on behalf of

171.   Excluded from the D.C. Rule 23 Wage Class are Defendants, Defendants' legal representatives, officers, directors, assigns, and successors, or any individual who has, or who at any time during the class period has had, a controlling interest in Defendants; the judge(s) to whom this case is assigned; and any member of the judge(s)' immediate family.

172.   Also excluded from the D.C. Rule 23 Wage Class are all persons who submit timely and otherwise proper requests for exclusion from the D.C. Rule 23 Wage Class.

173.   The members of the D.C. Rule 23 Wage Class are each so numerous that joinder of all members is impracticable.  Although the precise number of such persons is not known to Plaintiffs, the facts on which the calculation of that number can be based are presently within the sole control of Defendants.

174.   Upon information and belief, the size of the D.C. Rule 23 Wage Class is at least 40 individuals.

175.   Defendants have acted or refused to act on grounds generally applicable to the D.C. Rule 23 Wage Class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the D.C. Rule 23 Wage Class as a whole.

176.   Common questions of law and fact exist as to the D.C. Rule 23 Wage Class that predominate over any questions solely affecting them individually and include, but are not limited to, the following:

    a.    whether Defendants fail to pay Plaintiffs and the D.C. Rule 23 Wage Class Members at least the D.C. minimum wage;

    b.    whether Defendants fail to pay Plaintiffs and the D.C. Rule 23 Wage Class Members at least 1.5 times the minimum wage rate for hours worked over 40 in a workweek;

---

themselves and all putative Class Members to explore settlement negotiations.  They were unable to settle this matter.

c.      whether Defendants fail to pay Plaintiffs and the D.C. Rule 23 Wage Class
Members for all hours worked;

d.      whether Defendants unlawfully retain tips that belong to Plaintiffs and the
D.C. Rule 23 Wage Class Members;

e.      whether Defendants provide Plaintiffs and the D.C. Rule 23 Wage Class
Members with written notice that Defendants intend to avail themselves of
the tip credit, and if any written notice is provided, whether it includes all
the legally required language;

f.      whether Defendants post their tip-sharing policy in the restaurant;

g.      whether Defendants provide Plaintiffs and the D.C. Rule 23 Wage Class
Members with an itemized statement during each pay period that includes,
but is not limited to: (1) all deductions taken from wages and (2) a tip
declaration that delineates cash tips from credit card tips;

h.      whether Defendants require Plaintiffs and the D.C. Rule 23 Wage Class
Members to pay for their own uniforms;

i.      whether Defendants require Plaintiffs and the D.C. Rule 23 Wage Class
Members to clean their uniforms;

j.      whether Defendants fail to compensate for Plaintiffs to clean their
uniforms;

k.      whether Defendants fail to pay discharged employees all wages earned not
later than the working day following discharge;

l.      whether Defendants fail to pay all employees who quit or resign on the
next payday or within seven days, whichever is earlier;

m.     whether Defendants' unlawful practices or policies were done willfully;
and

n.      the nature and extent of class-wide injury and the measure of damages for
those injuries.

177.    The claims of Plaintiffs are typical of the claims of the D.C. Rule 23 Wage Class

they seek to represent.

178.    Plaintiffs and D.C. Rule 23 Wage Class Members enjoy the same statutory rights

under the D.C. Wage Laws (including to be paid the applicable minimum wage for all hours

worked).  Plaintiffs and D.C. Rule 23 Wage Class Members have all been injured in that

Defendants' pay policies harmed them in the same manner.

179.    Plaintiffs will fairly and adequately represent and protect the interests of the D.C.

Rule 23 Wage Class they represent.  Plaintiffs understand that as class representatives, they

assume a fiduciary responsibility to represent the interests of the D.C. Rule 23 Wage Class fairly

and adequately.  Plaintiffs recognize that as class representatives, they must represent and

consider the interests of the D.C. Rule 23 Wage Class just as they would represent and consider

their own interests.  Plaintiffs understand that in decisions regarding the conduct of the litigation

and its possible settlement, they must not favor their own interests over the interests of the D.C.

Rule 23 Wage Class they seek to represent.  Plaintiffs recognize that any resolution of a class

action lawsuit, including any settlement or dismissal thereof, must be in the best interests of the

D.C. Rule 23 Wage Class.

180.    Plaintiffs have retained counsel competent and experienced in complex class

actions and employment litigation.  There is no conflict between Plaintiffs and the members of

the D.C. Rule 23 Wage Class.

181.    A class action is superior to other available methods for the fair and efficient

adjudication of this litigation—particularly in the context of employment litigation like the

present action, where an individual plaintiff may lack the financial resources to vigorously

prosecute a lawsuit against a corporate defendant.  The D.C. Rule 23 Wage Class Members have

been damaged and are entitled to recovery as a result of Defendants' violations of the D.C. wage

laws.  Although the relative damages suffered by individual D.C. Rule 23 Wage Class Members

are not *de minimis*, such damages are small compared to the expense and burden of individual

prosecution of this litigation.  The individual plaintiffs lack the financial resources to conduct a

thorough examination of Defendants' pay practices, and to prosecute vigorously a lawsuit against Defendants to recover such damages.  In addition, class litigation is superior because it will obviate the need for unduly duplicative litigation that might result in inconsistent judgments about Defendants' practices.

182.    This action is properly maintainable as a class action under Rule 23 and D.C. Code § 32-1308.

### CLASS ACTION ALLEGATIONS: RULE 23 D.C. SICK LEAVE CLASS

183.    Plaintiffs bring the Seventh Cause of Action under Rule 23, and D.C. Code § 32-531.02 *et seq.* on behalf of themselves and a class of persons consisting of: all persons who are or were employed by Defendants within the past three years and 55 days and the date of final judgment, and who were paid sub-minimum, tip-credit hourly wages ("D.C. Rule 23 Sick Leave Class").[3]

184.    Excluded from the D.C. Rule 23 Sick Leave Class are Defendants, Defendants' legal representatives, officers, directors, assigns, and successors, or any individual who has, or who at any time during the class period has had, a controlling interest in Defendants; the judge(s) to whom this case is assigned; and any member of the judge(s)' immediate family.

185.    Also excluded from the D.C. Rule 23 Sick Leave Class are all persons who submit timely and otherwise proper requests for exclusion from the D.C. Rule 23 Sick Leave Class.

186.    The members of the D.C. Rule 23 Sick Leave Class are each so numerous that

---

[3]    Social Restaurant Group and Plaintiffs entered into tolling agreements from November 4, 2020 through December 29, 2020, 55 days prior to the filing of this Complaint, on behalf of themselves and all putative Class Members to explore settlement negotiations.  They were unable to settle this matter.

joinder of all members is impracticable.  Although the precise number of such persons is not

known to Plaintiffs, the facts on which the calculation of that number can be based are presently

within the sole control of Defendants.

187.    Upon information and belief, the size of the D.C. Rule 23 Sick Leave Class is at

least 40 individuals.

188.    Defendants have acted or refused to act on grounds generally applicable to the

D.C. Rule 23 Sick Leave Class, thereby making appropriate final injunctive relief or

corresponding declaratory relief with respect to the D.C. Rule 23 Sick Leave Class as a whole.

189.    Common questions of law and fact exist as to the D.C. Rule 23 Sick Leave Class

that predominate over any questions solely affecting them individually and include, but are not

limited to, the following:

      a.    whether Defendants failed to provide Plaintiffs and the members of the
D.C. Rule 23 Sick Leave Class not less than one hour of paid sick leave
for every 37 hours worked, not to exceed 7 days per calendar year;

      b.    whether Defendants failed to provide Plaintiffs and the members of the
D.C. Rule 23 Sick Leave Class not less than one hour of paid sick leave
for every 43 hours worked, not to exceed 5 days per calendar year;

      c.    whether Defendants failed to provide Plaintiffs and the members of the
D.C. Rule 23 Sick Leave Class paid sick leave at their regular rate of pay
but not lower than the full minimum wage; and

      d.    whether Defendants' practice or policy of denying paid sick leave was
done willfully.

190.    The claims of Plaintiffs are typical of the claims of the D.C. Rule 23 Sick Leave

Class they seek to represent.

191.    Plaintiffs and the members of the D.C. Rule 23 Sick Leave Class enjoy the same

statutory rights under the D.C. Accrued Safe and Sick Leave Act (including to be provided paid

sick leave) and have sustained similar types of damages as a result of Defendants' failure to

comply with the D.C. Accrued Safe and Sick Leave Act.  Plaintiffs and the members of the D.C.

Rule 23 Sick Leave Class have all been injured in that they have been denied paid sick leave due

to Defendants' policies, practices, and patterns of conduct.

192.    Plaintiffs will fairly and adequately represent and protect the interests of the D.C.

Rule 23 Sick Leave Class they seek to represent.  Plaintiffs understand that as class

representatives, they assume a fiduciary responsibility to represent the interests of the D.C. Rule

23 Sick Leave Class fairly and adequately.  Plaintiffs recognize that as class representatives, they

must represent and consider the interests of the D.C. Rule 23 Sick Leave Class just as they would

represent and consider their own interests.  Plaintiffs understand that in making decisions

regarding the conduct of the litigation and its possible settlement, they must not favor their own

interests over the interests of the D.C. Rule 23 Sick Leave Class they represent.  Plaintiffs

recognize that any resolution of a class action lawsuit, including any settlement or dismissal

thereof, must be in the best interests of the D.C. Rule 23 Sick Leave Class.

193.    Plaintiffs have retained counsel competent and experienced in complex class

actions and employment litigation.  There is no conflict between Plaintiffs and the members of

the D.C. Rule 23 Sick Leave Class.

194.    A class action is superior to other available methods for the fair and efficient

adjudication of this litigation—particularly in the context of employment litigation like the

present action, where an individual plaintiff may lack the financial resources to vigorously

prosecute a lawsuit against a corporate defendant.  The D.C. Rule 23 Sick Leave Class Members

have been damaged and are entitled to recovery as a result of Defendants' violations of the D.C.

Sick Leave Act.  Although the relative damages suffered by individual D.C. Rule 23 Sick Leave

Class Members are not *de minimis*, such damages are small compared to the expense and burden

of individual prosecution of this litigation.  The individual plaintiffs lack the financial resources to conduct a thorough examination of Defendants' sick leave practices, and to prosecute vigorously a lawsuit against Defendants to recover damages.  In addition, class litigation is superior because it will obviate the need for unduly duplicative litigation that might result in inconsistent judgments about Defendants' practices.

195.    This action is properly maintainable as a class action under Rule 23 and D.C. Code § 32-1308.

## CLAIMS FOR RELIEF

### COUNT I
### FLSA – Minimum Wage
### (Brought on Behalf of Plaintiffs and the Members of the FLSA Collective)

196.    Plaintiffs re-allege and incorporate by reference all allegations in all preceding paragraphs.

197.    Count I arises from Defendants' violation of the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.*, for their failure to pay minimum wages to Plaintiffs and similarly-situated tipped employees.

198.    Plaintiffs bring Count I as a collective action under Section 16(b) of the FLSA.

199.    During the entire course of Plaintiffs' employment at Provision No. 14, Defendants were Plaintiffs' "employer" as defined by the FLSA. 29 U.S.C. § 203(d).

200.    During the entire course of Plaintiffs' employment at Provision No. 14, Plaintiffs were Defendants' "employee[s]" as defined by the FLSA. 29 U.S.C. § 203(e)(1).

201.    During the entire course of Plaintiffs' employment at Provision No. 14, Plaintiffs were not exempt from the minimum wage provisions of the FLSA.

202.    Defendant Social Restaurant Group, LLC is an "enterprise" as defined by Section 3(r)(1) of the FLSA. 29 U.S.C. § 203(r)(1).

203.    Defendant Social Restaurant Group, LLC is an enterprise engaged in commerce or in the production of goods for commerce within the meaning of Section 3(s)(1)(A) of the FLSA. 29 U.S.C. § 203(s)(1)(A).

204.    Defendant Social Restaurant Group, LLC's annual gross volume of sales made or business done has exceeded $500,000 in each of the last three calendar years.

205.    Defendants violated the FLSA by failing to pay Plaintiffs and similarly situated tipped employees the full minimum wage even though Defendants: (1) fail to give proper notice that they intend to avail themselves of the tip credit; (2) retain tips that lawfully belong to tipped employees; and (3) require tipped employees to perform non-tipped work that (a) is unrelated to their tipped occupation or (b) exceeds 20 percent of their time worked during individual work weeks.

206.    Defendants fail to pay Plaintiffs and similarly situated tipped employees anything for hours worked over 40 in a workweek and for time they spent engaged in "deep cleaning."

207.    Defendants' violations of the FLSA were willful.

208.    As a result of Defendants' willful violations of the FLSA, Plaintiffs and the FLSA Collective Members have suffered damages by being denied minimum wages in accordance with the FLSA in amounts to be determined at trial, and are entitled to recovery of such amounts, liquidated damages, prejudgment interest, attorneys' fees, costs, and other compensation pursuant to 29 U.S.C. § 201, *et seq.*

**COUNT II**
**FLSA – Overtime Wages**
**(Brought on Behalf of Plaintiffs and the Members of the FLSA Collective)**

209.     Plaintiffs re-allege and incorporate by reference all allegations in all preceding paragraphs.

210.     Count II arises from Defendants' violation of the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq*., for their failure to pay Plaintiffs and similarly situated tipped employees at least 1.5 times the minimum wage for hours worked over 40 in a workweek.

211.     Plaintiffs bring Count II as a collective action under Section 16(b) of the FLSA.

212.     During the entire course of Plaintiffs' employment at Provision No. 14, Defendants were Plaintiffs' "employer" as defined by the FLSA. 29 U.S.C. § 203(d).

213.     During the entire course of Plaintiffs' employment at Provision No. 14, Plaintiffs were Defendants' "employee[s]" as defined by the FLSA. 29 U.S.C. § 203(e)(1).

214.     Defendant Social Restaurant Group, LLC is an "enterprise" as defined by Section 3(r)(1) of the FLSA. 29 U.S.C. § 203(r)(1).

215.     Defendant Social Restaurant Group, LLC is an enterprise engaged in commerce or in the production of goods for commerce within the meaning of Section 3(s)(1)(A) of the FLSA. 29 U.S.C. § 203(s)(1)(A).

216.     Defendant Social Restaurant Group, LLC's annual gross volume of sales made or business done has exceeded $500,000 in each of the last three calendar years.

217.     Defendants' violations of the FLSA were willful.

218.     As a result of Defendants' violations of the FLSA, Plaintiffs and the FLSA Collective Members have been deprived of overtime compensation in amounts to be determined

at trial, and are entitled to recovery of such amounts, liquidated damages, prejudgment interest, attorneys' fees, costs, and other compensation pursuant to 29 U.S.C. § 201, *et seq.*

## COUNT III
### D.C. Minimum Wage Revision Act – Minimum Wages
### (Brought on Behalf of Plaintiffs and the Members of the D.C. Rule 23 Wage Class)

219.     Plaintiffs re-allege and incorporate by reference all allegations in all preceding paragraphs.

220.     At all relevant times, Plaintiffs and the members of the D.C. Rule 23 Wage Class have been employees and Defendants have been employers within the meaning of the D.C. Minimum Revision Wage Act.  D.C. Code § 32-1002(2), (3).

221.     Plaintiffs and the members of the D.C. Rule 23 Wage Class are covered by the D.C. Minimum Revision Wage Act.

222.     Defendants were not eligible to avail themselves of the tip credit, D.C. Code § 32-1003(f), because Defendants failed to provide Plaintiffs and members of the D.C. Rule 23 Wage Class with written notice as required by D.C. Code Ann. § 32-1003(g).

223.     Defendants were not eligible to avail themselves of the tip credit, D.C. Code § 32-1003(f), because Defendants did not permit Plaintiffs and the members of the D.C. Rule 23 Wage Class to retain all tips they received, in violation of the DCMWRA, D.C. Code § 32-1003(g)(3).

224.     Defendants were not eligible to avail themselves of the tip credit, D.C. Code § 32-1003(f), because Defendants did not post its tip-sharing policy at Provision No. 14, in violation of the DCMWRA, D.C. Code § 32-1003(g)(2).

225.     Defendants were not eligible to avail themselves of the tip credit, D.C. Code § 32-1003(f), because Defendants did not provide tipped workers each pay period with an "itemized

statement" that included "deductions from . . . wages" or "tip-declaration . . . delineating cash tips and credit-card tips."  D.C. Code Ann. § 32-1008(b).

226.     Defendants failed to pay Plaintiffs and similarly situated tipped employees anything for hours worked over 40 in a workweek and for time they spent engaged in "deep cleaning."

227.     Defendants required Plaintiffs and similarly situated tipped employees to purchase, maintain, and clean their uniforms.

228.     Defendants did not pay Plaintiffs and similarly situated tipped employees an additional $.15 per hour to cover the maintenance and cleaning costs.

229.     Purchasing, maintaining, and cleaning their uniforms, brought Plaintiffs' and similarly situated tipped employees' compensation further below the minimum wage.

230.     Defendants' violations of the DCMWRA were willful.

231.     Due to Defendants' violations of the DCMWRA, Plaintiffs and the members of the D.C. Rule 23 Wage Class are entitled to recover from Defendants damages including but not limited to unpaid wages, liquidated damages equal to treble the amount of unpaid wages, and reasonable attorneys' fees and costs of the action.  D.C. Code §§ 32-1012, 32-1308.

### COUNT IV
### D.C. Minimum Wage Revision Act – Overtime Wages
### (Brought on Behalf of Plaintiffs and the Members of the Rule 23 Wage Class)

232.     Plaintiffs re-allege and incorporate by reference all allegations in all preceding paragraphs.

233.     At all relevant times, Plaintiffs and the members of the Rule 23 Wage Class have been employees and Defendants have been employers within the meaning of the D.C. Minimum Revision Wage Act.  D.C. Code § 32-1002(2), (3).

234.     Count IV arises from Defendants' failure to pay Plaintiffs and Rule 23 Wage Class at least 1.5 times the minimum wage for hours worked over 40 in a workweek.

235.     Plaintiffs and the members of the Rule 23 Wage Class are covered by the D.C. Minimum Revision Wage Act.

236.     Defendants' violations of the DCMWRA were willful.

237.     Due to Defendants' violations of the DCMWRA, Plaintiffs and the members of the D.C. Rule 23 Wage Class are entitled to recover from Defendants damages including but not limited to unpaid overtime wages, liquidated damages equal to treble the amount of unpaid wages, and reasonable attorneys' fees and costs of the action.  D.C. Code §§ 32-1012, 32-1308.

### COUNT V
### D.C. Minimum Wage Revision Act – Tip Misappropriation
### (Brought on Behalf of Plaintiffs and the Members of the Rule 23 Wage Class)

238.     Plaintiffs re-allege and incorporate by reference all allegations in all preceding paragraphs.

239.     In violation of the DCMWRA, Defendants unlawfully withheld from tipped employees 2% of all gratuities received at private events.  D.C. Code §§ 32-1012, 32-1308.

240.     In violation of the DCMWRA, Defendants unlawfully withheld from tipped employees when there were customer walkouts, breakages, or the cash register was short money. D.C. Code §§ 32-1012, 32-1308.

241.     Defendants' violations of the DCMWRA were willful.

242.     Due to Defendants' violations of the DCMWRA, Plaintiffs and the members of the Rule 23 Wage Class are entitled to recover from Defendants their misappropriated tips, reasonable attorneys' fees and costs of the action, and pre-judgment and post-judgment interest. D.C. Code §§ 32-1012, 32-1308.

**COUNT VI**
**D.C. Wage Payment and Collection Law - Failure to Timely Pay All Earned Wages**
**(Brought on Behalf of Plaintiffs and the Members of the Rule 23 Wage Class)**

243.     Plaintiffs re-allege and incorporate by reference all allegations in all preceding paragraphs.

244.     At all times relevant, Plaintiffs and the D.C. Rule 23 Wage Class Members have been employees and Defendants have been an employer within the meaning of the DCWPCL.

245.     Plaintiffs and D.C. Rule 23 Wage Class Members are covered by the DCWPCL.

246.     Defendants failed to timely pay D.C. Rule 23 Wage Class Members all wages earned, included earned tips, as required by the DCWPCL, D.C. Code § 32-1302.

247.     Defendants failed to pay D.C. Rule 23 Wage Class Members minimum wage for all hours worked and failed to pay all earned tips.

248.     Defendants failed to keep, make, preserve, maintain, and furnish accurate records of time worked by Plaintiffs and D.C. Rule 23 Wage Class Members.

249.     Due to Defendants' violations of the DCWPCL, D.C. Rule 23 Wage Class Members are entitled to recover from Defendants their unlawfully withheld wages, including tips, liquidated damages equal to treble the amount of unpaid wages, attorneys' fees and costs of the action, and pre-judgment and post-judgment interest, as provided by law.

**COUNT VII**
**D.C. Accrued Safe and Sick Leave Act – Failure to Provide Sick Leave**
**(Brought on Behalf of Plaintiffs and the Members of the D.C. Rule 23 Sick Leave Class)**

250.     Plaintiffs re-allege and incorporate by reference all allegations in all preceding paragraphs.

251.     At all relevant times, Plaintiffs and the members of the D.C. Rule 23 Sick Leave Class have been employees and Defendants have been employers within the meaning of the Sick

36

Leave Act.  D.C. Code § 32-531.01(2), (3)(A).

252.     Plaintiffs and the members of the D.C. Rule 23 Sick Leave Class are covered by the Sick Leave Act.

253.     Defendants employed Plaintiffs and members of the D.C. Rule 23 Sick Leave Class.

254.     Defendants violated the Sick Leave Act, in relevant part, by failing to provide Plaintiffs and the members of the Rule 23 Sick Leave Class "not less than one hour of paid leave for every 43 hours worked, not to exceed 5 days per calendar year," at the full D.C. minimum wage.  D.C. Code § 32-531.02(g).

255.     Defendants' violations of the Sick Leave Act have been willful and intentional.

256.     Due to Defendants' violations of the Sick Leave Act, Plaintiffs and the members of the D.C. Rule 23 Sick Leave Class are entitled to recover from Defendants damages including but not limited to lost wages, statutory penalties, reasonable attorneys' fees and costs of the action, and pre-judgment and post-judgment interest.  D.C. Code § 32-531.12(b), (c), (e), (g).

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs, individually, and on behalf of all other similarly situated persons, respectfully request that this Court grant the following relief:

A.       That, at the earliest possible time, Plaintiffs be allowed to give notice of this collective action, or that the Court issue such notice, to all persons who are members of the FLSA Collective.  Such notice shall inform them that this civil action has been filed, of the nature of the action, and of their right to join this lawsuit if they believe they were denied minimum wages and/or overtime;

B.       Certification of the D.C. Rule 23 Wage Class pursuant to Federal Rule of Civil

Procedure 23;

C.    Certification of the D.C. Rule 23 Sick Leave Class pursuant to Federal Rule of Civil Procedure 23;

D.    Designation of Plaintiffs as Class Representatives for the D.C. Rule 23 Wage Class and the D.C. Rule 23 Sick Leave Class;

E.    Designation of counsel of record as Class Counsel for the D.C. Rule 23 Wage Class and the D.C. Rule 23 Sick Leave Class;

F.    Declaratory relief, including a declaration that the practices complained of in this Collective and Class Action Complaint are unlawful;

G.    Equitable and injunctive relief, including but not limited to an order enjoining Defendants from continuing its unlawful practices;

H.    Monetary relief, including compensation for the value of any paid sick leave denied by Defendants, unpaid wages, statutory damages, consequential damages, civil penalties, liquidated damages, and punitive damages;

I.    Pre- and post- judgment interest;

J.    Attorneys' fees and costs to the extent allowable by law;

K.    Payment of service awards to Plaintiffs, in recognition of the services they rendered, and will continue to render, to the FLSA Collective, D.C. Rule 23 Wage Class, and the D.C. Rule 23 Sick Leave Class; and

L.    Any other remedy the Court deems appropriate.

**JURY DEMAND**

Plaintiffs demand a trial by jury.

Dated: December 30, 2020

Respectfully submitted,

Sally J. Abrahamson (Bar No. 999058)
Werman Salas P.C.
335 18th Pl. NE
Washington, D.C. 20002
Tel.: (202) 744-1407
Email: sabrahamson@flsalaw.com

Maureen A. Salas (Bar No. IL0071)
Werman Salas P.C.
77 West Washington St., Suite 1402
Chicago, Illinois 60602
Tel.: (312) 419-1008
Email: msalas@flsalaw.com

Frank Mazzaferro *(pro hac vice forthcoming)*
Fitapelli & Schaffer, LLP
28 Liberty Street
New York, NY 10005
Tel.: (212) 300-0375
Email: fmazzaferro@fslawfirm.com

*Attorneys for Plaintiffs and the Putative
Collective and Classes*